**FARMERS UNION OIL COMPANY OF DICKINSON, a corporation, Plaintiff/Appellee,**

v.

**Charles A. WOOD, Defendant/Appellant.**

**Civ. No. 9802.**

Supreme Court of North Dakota.

Dec. 19, 1980.

131

Beyer & Holm, Dickinson, for defendant and appellant; argued by John O. Holm.

Reichert, Howe, Hardy, Galloway & Jorgensen, Dickinson, for plaintiff and appellee; argued by Donald L. Jorgensen, Dickinson.

PAULSON, Justice.

Charles A. Wood ["Wood"] appeals from a judgment entered against him by the Stark County District Court on April 10, 1980, which judgment awarded Farmers Union Oil Company of Dickinson ["Farmers Union"] the sum of $1,229.16. We affirm the judgment of the district court.

On September 27, 1977, a woman representing herself as Mrs. Charles Wood completed an application for an open credit account with Farmers Union. In fact, the woman [hereinafter "Sue"] associated with Wood but was not married to him. Farmers Union approved the establishment of an open credit account bearing the name of Charles A. Wood. When Farmers Union established an open credit account with a customer, the customer was extended a 30-day trial credit period in which to use the open credit account payment procedure. If payments were made promptly at the end of the 30-day trial period, Farmers Union extended the open credit account payment period to 90 days. During the period extending from October 6, 1977, through March 12, 1978, Sue and Wood purchased products and services under the open credit account. Wood made two payments on the balance due under the open credit account during the first two months after it was established. Thereafter, no monthly payments were made and Farmers Union canceled the privileges of credit purchases under the open credit account. Wood and Sue have discontinued their personal relationship.

In May of 1978, Elaine Wood, Charles Wood's former wife [from whom he was divorced in 1976, but whom he remarried in December of 1978] informed Farmers Union that no payments would be made on the balance due on the open credit account except for purchases represented by sales slips which contained the signature of Charles Wood. Thus, products and services purchased by Sue were not paid for. From October 25, 1977, through April of 1978 Farmers Union had sent Wood periodic statements which reflected the balance due on the open credit account. Wood paid for the items which both he and Sue had purchased. However, after his relationship with Sue ended, Wood disavowed knowledge of the purchases made by Sue. Wood has not disavowed knowledge that the open credit account was established in his name by Sue. On numerous occasions Wood and Sue appeared together at the Farmers Union business establishment in Dickinson to purchase goods and services. However, Wood contends that these purchases occurred on occasions where the open credit account was not used; thus, Wood asserts that he had no knowledge of separate open credit account purchases by Sue. On October 29, 1977, Wood and Sue purchased a color television set and a stereo from Farmers Union. The purchase was reflected as an open credit account purchase until Wood obtained a loan from a finance company. The sales ticket did not bear the signature of Sue or Wood because the purchase occurred after-hours and the employee from Farmers Union who delivered the items failed to secure signatures on the sales ticket.

Farmers Union initiated this action on February 23, 1979. In its complaint, Farmers Union alleged that Wood was indebted to Farmers Union in the sum of $1,229.16, by reason of Farmers Union's having delivered to Wood, upon his demand, goods, merchandise, and supplies. In his answer to Farmers Union's complaint, Wood alleged that Sue was wholly responsible and liable for the payment for the goods and services which she had purchased and received. On March 11, 1980, the trial of this case was held in the district court of Stark County. Wood objected to the introduction into evidence of sales tickets kept by Farmers Union. The sales tickets were introduced into evidence pursuant to § 31–08–01 of the North Dakota Century Code, and Rule 803(6) of the North Dakota Rules of Evidence. Wood asserted that authentication of the signatures of Wood and Sue was necessary before the sales tickets could be introduced into evidence. Sue was not available at the trial and Wood did not appear at the trial. After the action was commenced, Wood discharged his attorney

and employed the attorney who acted on Wood's behalf at the trial. Wood's first attorney had orally assured the attorney representing Farmers Union that Wood would appear at the trial. Relying upon this assurance, the attorney representing Farmers Union did not apply for a subpoena to obtain Wood's presence at the trial.

Wood also objected to the introduction of evidence which sought to establish that Wood had ratified the use of the open credit account by the woman representing herself as Mrs. Charles Wood. Wood relied upon the case of *Askew v. Joachim Memorial Home*, 234 N.W.2d 226 (N.D.1975), in which we held that ratification must be raised in the pleadings in order to be an issue at trial or on appeal unless the issue of ratification, although not specifically pleaded, was tried with the consent of all parties. The issue of ratification was not contained in the pleadings of Farmers Union. Finally, Wood asserts that he did not authorize Sue's purchases by use of the open credit account and that no agency relationship existed between the parties. The issues presented for our consideration are as follows:

1. Whether or not an agency relationship existed between Wood and Sue, who established the open credit account, and whether or not Wood authorized the purchases made by Sue, who used the open credit account to pay for the goods and services which she purchased;

2. Whether or not the district court committed error when it permitted the admission of evidence relating to ratification of the agency relationship; and

3. Whether or not Farmers Union established that Wood and Sue had executed the purchase contracts or received the goods and services from Farmers Union.

I

■ The first issue concerns whether or not an agency relationship existed between Wood and the woman with whom he associated and who represented herself as his wife, Sue, when she applied for the open credit account and whether or not Sue's purchases of goods and services through the use of the open credit account were authorized. Agency is the relationship which results where one person, called the principal, authorizes another person, called the agent, to act for him in dealing with third persons. Section 3-01-01, N.D.C.C. An agency relationship is either actual or ostensible. It is actual when the agent really is employed by the principal. It is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who, in actuality, is not employed by the principal. § 3-01-03, N.D.C.C. Agency is created and authority is conferred by a prior authorization or a subsequent ratification of the act. § 3-01-06, N.D.C.C. Actual authority is authority which the principal intentionally confers upon the agent or by want of ordinary care allows the agent to believe himself to possess. "Ostensible" or "apparent" authority is authority which the principal intentionally or by want of ordinary care allows a third person to believe the agent possesses. § 3-02-02, N.D.C.C. An agent never has actual or ostensible authority to do an act which is, and is known or suspected by the person with whom he deals to be, a fraud upon the principal. § 3-02-07, N.D.C.C. When an agent exceeds his authority, his principal is bound by his authorized acts so far only as they can be plainly separated from those which are unauthorized. § 3-03-02, N.D.C.C. A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof. § 3-03-03, N.D.C.C.

■ In *Lander v. Hartson*, 77 N.D. 923, 47 N.W.2d 211 (1951), we held that a presumption exists that a person acts for himself and not as the agent of another. Where the existence of an agency relationship is denied the burden of proof is upon the party who affirms its existence. The burden of proof, *i. e.*, the burden of persua-

sion, in such cases is clear and specific—clear and convincing. In *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869 (N.D.1977), we stated that a third person acts in good faith and without ordinary negligence if the third person uses reasonable diligence and prudence in ascertaining whether the agent acts within the scope of his authority. The mere assumption of authority will not bind the principal. In *Bernard v. Madsen*, 52 N.D. 822, 204 N.W. 196 (1925), the court held that an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent dealt was justified in assuming that the agency existed. In *McLane v. F.H. Peavey & Co.*, 72 N.D. 468, 8 N.W.2d 308 (1943), this court set down a test to determine whether or not an apparent or ostensible agency relationship existed, "It must rest upon conduct or communications of the principal which reasonably interpreted causes a third person to believe that the agent has authority to act for and on behalf of the principal." *McLane, supra*, 8 N.W.2d at 310.

■ After reviewing the record, we are satisfied that substantial evidence existed which supported the district court's finding of fact that an agency relationship existed between Wood, as principal, and the woman, Sue, who represented herself to be Mrs. Charles Wood, as agent. The evidence is sufficient to rebut the presumption that a person does not act as the agent of another and is clear and specific. After the open credit account was established, both Wood and Sue utilized the open credit account for a number of purchases and appeared together at the business establishment of Farmers Union on a number of occasions. The monthly statements sent by Farmers Union to Wood reflected the purchases which both Wood and Sue had made on the open credit account. Wood did not dispute the balance due as listed in these statements; therefore, it was reasonable for Farmers Union to assume that Wood had authorized Sue's use of the open credit account. In addition, Wood associated with

Sue and did not dispute the balance due on the account until his relationship with Sue had ended. Wood's assertion that he did not know of Sue's use of the open credit account is incredible, especially in view of the fact that both parties utilized the open credit account when they purchased the stereo and the television set, on October 29, 1977. The effect of the existence of the ostensible agency relationship between Wood and Sue is that Wood is liable for the amount of the purchases made by Sue on the open credit account. *See* § 3–03–03, N.D.C.C.

■ Farmers Union acted in good faith and without ordinary negligence in ascertaining whether or not Sue acted within the scope of her authority, especially in view of the fact that Wood appeared in the business establishment with Sue and purchased goods and services with her and did not dispute the amount of Sue's purchases as reflected in the monthly statements sent by Farmers Union. Sue had established the open credit account for Wood. In view of this course of conduct, it was reasonable for Farmers Union to believe that Sue had authority to use the open credit account. Under § 3–03–02, N.D.C.C., the principal is bound by unauthorized acts of his agent through which an innocent third party has sustained a loss unless the limitations of the agency are known or can be readily ascertained. *See* 10 Cal.Civil Code § 2333; *Lange v. Curtin*, 11 Cal.App.2d 161, 53 P.2d 185 (1936).

II

Our disposition of the first issue renders unnecessary our consideration of the second issue raised by Wood. The Restatement of Agency 2d § 82, page 210, defines "ratification" as

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

■ Ratification is distinguished from the situation in which an agent's acts bind the principal because the agent acted within his apparent or ostensible authority and in which the principal, satisfied with the transaction, accepts the proceeds of the agent's acts or otherwise indicates approval. Ratification carries the connotation that the act was done or purported to be done for a person who acquired no rights or liabilities because of it, except the right to elect to become a party to it. *See* Restatement of Agency 2d § 831, page 240.

### III

The final issue concerns whether or not Farmers Union established that Wood and Sue had executed the purchase contracts or received the goods and services from Farmers Union. The sales tickets which reflected the purchases made by Sue and Wood from Farmers Union were introduced into evidence pursuant to § 31–08–01, N.D. C.C., and Rule 803(6), N.D.R.Ev. Wood objected to the admission of the sales tickets into evidence on the ground that authentication of the signatures of Wood and Sue was necessary before the sales tickets could be introduced into evidence. § 31–08–01, N.D.C.C. provides:

"*31–08–01. Admissibility in evidence of business records—Term 'business' defined—Exception*—A record of an act, condition, or event shall be competent evidence insofar as relevant, if:

1. The custodian or other qualified witness testifies to its identity and the mode of its preparation.

2. It was made in the regular course of business at or near the time of the act, condition, or event.

3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission.

For the purpose of this section the term 'business' shall include every kind of business, profession, occupation, calling, or

operation of institutions, whether carried on for profit or not. The records and proceedings of any regularly constituted medical review committee of a licensed medical hospital or a medical society in this state shall not be subject to discovery or admissible as evidence."

Rule 803(6) of the North Dakota Rules of Evidence provides:

"Rule 803—HEARSAY EXCEPTIONS: AVAILABILITY OF DECLARANT IMMATERIAL

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"*(6) Records of regularly conducted business activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

■ In *Pulkrabek, Inc. v. Yamaha Intern. Corp.*, 261 N.W.2d 657 (N.D.1977), we held that Rule 803(6), N.D.R.Ev., is in complete harmony with § 31–08–01(2), N.D. C.C., which requires that the record, in order to be admissible, "was made in the regular course of business, at or near the time of the act, condition, or event". Both § 31–08–01 and Rule 803(6) provide for an exception to the "hearsay" rule, which is defined in Rule 801(c).[1] Under Rule 803(6),

1. Rule 801(c) states: "*Hearsay.* 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

N.D.R.Ev., the testimony of the custodian or other qualified witness who can explain the record-keeping of his business is essential. The custodian need not have personal knowledge of the actual creation of the document. See *United States v. Reese*, 568 F.2d 1246 (5th Cir.1977); *United States v. Rose*, 562 F.2d 409 (7th Cir.1977); *Fernandez v. Chios Shipping Co., Ltd.*, 542 F.2d 145 (2d Cir.1976); *United States v. Pfeiffer*, 539 F.2d 668 (8th Cir.1976). Also, it is unnecessary for the custodian to have been in the employ of the business at the time of the making of the record. *United States v. Evans*, 572 F.2d 455 (5th Cir.1978). Although Wood agrees that the sales tickets were admissible into evidence under § 31–08–01, N.D.C.C., and Rule 803(6), N.D.R.Ev., he asserts that Farmers Union did not establish that Wood or Sue signed the sales tickets or purchased the goods and services and that authentication of their signatures was necessary. Both Wood and Sue were not available at the trial.

Rule 803(6) requires that each participant in the chain of employees who produced the records must be acting in the course of a regularly conducted business activity, or must meet the test of some other hearsay exception. The reason underlying the business records exception fails if any of the participants is outside the pattern of regularity of activity. Wood contends that a double hearsay problem exists in this case; however, Wood admits that the business records, *i. e.*, sales tickets, invoices, and credit application, fall within the business records exception to the hearsay rule. No double hearsay problem exists in this case because the records were made in the regular practice by the employees of Farmers Union as shown by the testimony of qualified witnesses who were employees of Farmers Union.

Wood also contends that no authentication of his signature and Sue's signature was established at the trial. When

Rule 801(a) states: "*Statement.* A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."

a claim involves any element of personal connection with a corporeal object, the connection between the person and the object must be established in order to bind the person to his act.[2] This requirement is contained in Rule 901, N.D.R.Ev. Under section (a) of Rule 901, the requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be. Rule 901(b), N.D.R.Ev., places no limitations upon the number of methods of proving authentication. Wood's signature and Sue's signature were authenticated by the testimony of an employee of Farmers Union who saw Sue sign the open credit account application and by an employee of Farmers Union who saw Wood sign a sales ticket. It is generally held that a witness familiar with the handwriting of a given person may establish by his testimony that a signature is in the handwriting of a person. *See* McCormick on Evidence 2d Ed. §§ 219–221. This principle is reflected in Rule 901(b)(1), N.D.R.Ev., which acknowledges that authentication can occur through the testimony of a witness with knowledge that a matter is what it is claimed to be.

Wood's contention that Farmers Union has not proved that he or Sue received goods and services from Farmers Union is without merit. The business records of Farmers Union and the testimony of three employees of Farmers Union overwhelmingly establish that Wood and Sue received goods and services from Farmers Union. No evidence was presented which would direct a conclusion to the contrary. Wood did not assert that purchases of goods and services were not properly assessed to his account but asserted that Sue had received the goods and services and was responsible for the payments. Wood did not assert that Sue had perpetrated a fraud; thus, the district court's conclusion that Sue was Wood's agent and that Wood is responsible for the purchase made by Sue was proper.

2. McCormick on Evidence 2d Ed. § 218, p. 544.

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.